# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 3:20-108 |
| ROBERT THOMPSON, | : | (JUDGE MANNION) |
| Defendant | : | |

## MEMORANDUM

Presently before the court in this drug trafficking case is the April 12, 2021 motion *in limine* filed by defendant Robert Thompson, through his counsel, to preclude the government from introducing evidence of his alleged aliases, of his alleged association with the "Bloods street gang", and from presenting any evidence that the distribution of drugs from the alleged conspiracy charged in this case resulted in overdose deaths. (Doc. 356). The government opposes Thompson's motion. (Doc. 412). Thompson filed his reply brief on June 14, 2021. (Doc. 440). For the reasons set forth below, Thompson's motion *in limine* will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND[1]

Thompson, a/k/a "Jeffrey Parker", is charged in a second superseding indictment, (Doc. 392), with one count of conspiracy to distribute controlled substances, i.e., heroin, cocaine, fentanyl, cocaine base ("crack"), and tramadol, Count 1, in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(A) and (B), and one count of distribution of a controlled substance, i.e., fentanyl, Count 10, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C).

Thompson, along with his three remaining co-defendants, namely, Tysheen Gott, Anthony Brown and Damien Navarro, are scheduled to jointly go to trial on August 16, 2021.

## II. STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the

---

[1]Since the complete procedural and factual background of this case is stated in the court's July 2, 2021 Memorandum denying Thompson's motion to suppress wiretap evidence, (Doc. 452), it will not be fully repeated herein. (*See also* government's opposition brief, Doc. 412 at 2-4).

evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Auto. Ins. Co., 2017 WL 3198006, *2 (M.D. Pa. July 27, 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." Tartaglione, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id*. (quoting Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460 (1984)).

## III. DISCUSSION

Thompson's motion *in limine* is filed pursuant to Fed.R.Evid. 401, 402, 403, and 404(b). The motion seeks, in part, to exclude evidence as irrelevant. It is axiomatic that generally "all relevant evidence is admissible" and that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Federal Rule of Evidence 404(b) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show conformity therewith". However, under Rule 404(b), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

### 1. Thompson's Aliases

Thompson moves to exclude any evidence at trial that he has, or used, any of the alleged aliases, including "Jeffrey Parker." He claims that this evidence is irrelevant and immaterial, and that any probative value of this evidence is substantially outweighed by the danger of unfair prejudice. No doubt that the second superseding indictment referred to Thompson by his legal name, as well as by his alias, "Jeffrey Parker". (Doc. 392).

In response to Thompson's motion, the government points out that "Courts have held that when proof of an alias is relevant to identifying the defendant, or otherwise relates to proof of acts charged in an indictment, it is permissible for the United States to use the aliases at trial." As such, the government indicates that it "will present witnesses who came to know Thompson by the name of 'Jeff' or 'Red'", but it "does not intend to gratuitously use Thompson's aliases." (Doc. 412 at 6). The government also states that "where use of the alias will prevent jury confusion, such as where a witness only knows the defendant by his aliases, then use of the aliases should be allowed." (Id.).

The court will allow the government to use Thompson's street names and aliases since they are referenced in the wiretaps that will be presented

as evidence at trial and since some of the government's witnesses knew Thompson by his aliases or street names. Similarly, in <u>United States v. Brown</u>, 636 Fed.Appx. 157, 159 (4th Cir. 2016), the Fourth Circuit held that the district court properly admitted evidence of the defendant's alias. The Court stated that "[e]vidence of a defendant's use of an alias or nickname is admissible if relevant to identification of the defendant in connection with the crimes alleged", however, "even when relevant, a defendant's alias may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. The Court then found "no misuse of [defendant's] nickname" since "[his] identity was at issue, as many of the text messages presented to the jury provided only a nickname." The Court also indicated that the defendant's nickname, "Doom", "does not suggest a propensity to engage in drug trafficking or to possess firearms illegally."

      Thus, the court finds that the use of Thompson's aliases is relevant since it is related to the evidence and testimony that the government will be presenting at trial and it would be too confusing to the jury if they were not apprised of his aliases when they are presented with the intercepted communications.

Additionally, evidence regarding Thompson's aliases is also admissible under FRE 404(b), since, as the government states, "[w]itness testimony regarding their knowledge of Thompson as 'Jeff' or 'Red' is relevant and admissible for identity purposes." (Doc. 412 at 7-8) (string citations omitted). In fact, recently the Third Circuit in U.S. v. Williams, 974 F.3d 320, 356 (3d Cir. 2020), agreed and adopted the standard of other circuits regarding the use of a defendant's alias at trial. The Court stated, "[s]everal of our sister circuits have long maintained that the prosecution's use of a defendant's alias in an indictment or at trial is permissible where the evidence is relevant—including for purposes of identifying the defendant—and does not result in unfair prejudice." Id. (citing United States v. Doe, 741 F.3d 217, 227 (1st Cir. 2013); United States v. Farmer, 583 F.3d 131, 144-47 (2d Cir. 2009); United States v. Emuegbunam, 268 F.3d 377, 394 (6th Cir. 2001); United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir. 1996); United States v. Hines, 955 F.2d 1449, 1454 (11th Cir. 1992); United States v. Williams, 739 F.2d 297, 299-300 (7th Cir. 1984)).

The Third Circuit in Williams, id., explained that the witness knew defendant "only by his nickname, and the District Court engaged in a reasonable balancing of the testimony's relevance with the nickname's

potential to generate unfair prejudice." The Court also pointed out that there was no indication that "the Government used the alias to do anything other than identify [defendant] in a witness's testimony"

Thus, Thompson's motion in *limine* will be denied regarding the limited use of evidence at trial referencing his aliases.


### 2. Thompson's Alleged Gang Affiliation

Thompson contends that any evidence regarding his alleged association or membership with the Bloods gang as well as any evidence referencing the Bloods or any street gang should be excluded at trial. He argues that any such evidence is irrelevant and immaterial to the charged offenses, and that evidence of other crimes, wrongs, or acts is not admissible under FRE 404(b). Thompson also claims that any probative value of such evidence is substantially outweighed by the danger of unfair prejudice and should be excluded under FRE 403.

"Courts have observed that '[e]vidence of gang affiliation, like all other evidence, is admissible if relevant to a disputed issue, but if such evidence is more prejudicial than probative, it should be excluded.'" U.S. v. Ranalli, 2015 WL 538729, *8 (M.D. Pa. Feb. 10, 2015) (citations omitted).

The government, (Doc. 412 at 8-9), explains the relevancy of Thompson's Bloods gang affiliation as follows:

> Regarding Thompson's affiliation with the Bloods street gang, several of the electronic communications (text messages) intercepted via the Title III interception aspect of the investigation, in particular the text communications between Tysheen Gott, a/k/a "LB" and Thompson, implicate use of certain wording associated with the Bloods street gang. To some degree, this will require explanation to the jury. One or more of the Government witnesses will explain that Blood communications typically replace the letter "c" with the letter "b" as a means of showing loyalty to the Bloods and separation from the Crips. For example, a home, an apartment, or a "crib" would be referred to as a "brib." Thompson and Tysheen Gott, a/k/a "LB," frequently communicated in this manner, which also demonstrates the close relationship and bond between the two co-conspirators.

The government also contends that Thompson's Bloods gang affiliation is relevant under Rule 401 and should be admitted "to explain the nature of the electronic communications to the jury to enhance the understanding of the messages contained therein." (Id. at 9). However, the government represents that it "does not intend to illicit any direct testimony to establish that Thompson or any other co-conspirator is a member of the Bloods street gang." (Id. at 10).

In his reply brief, (Doc. 440 at 2), Thompson challenges the government's assertion as to the relevancy of his alleged affiliation with the Bloods gang and contends that no explanation to the jury will be required

regarding the stated references in some of the intercepted text messages. Thompson contends that "[t]here is simply no issue as to the sporadic substitution of the letter "b" for the letter "c" in a few text messages or conversations", and indicates that he "will not rely upon a few misspelled words as his defense at trial." He further contends that "[t]he misspellings, or mispronunciations of a few words here and there in text messages or conversations do not cause confusion as to the substance of the messages or conversations." As such, Thompson maintains that "to allow any mention of the Bloods street gang, or the nuances of Blood communications, [] would be unfairly prejudicial [to him]."

The court finds that evidence regarding Thompson's alleged Bloods gang affiliation is simply too prejudicial to be admitted into evidence. The court also finds that even though the government contends that this evidence is admissible "to understand the context of the electronic communications between Thompson and one or more of his co-conspirators", (Doc. 412 at 10), the minimal misspelling of a few words does not detract from understanding the communications, i.e., the jury will be able to understand the messages and the nature of the intercepted electronic communications without any reference to gang affiliation. The court thus finds that the

prejudicial effect of this evidence related to gang affiliation substantially outweighs the limited probative value in balancing under Rule 403. *See* U.S. v. Carter, 410 Fed.Appx. 549, 552 (3d Cir. 2011) (noting that the Third Circuit holds that "Rule 403 creates a presumption of admissibility" and that "evidence can be kept out only if its unfairly prejudicial effect 'substantially outweigh[s]' its probative value.") (citations omitted).

Thus, Thompson's motion in *limine* will be granted and any evidence referencing his alleged Bloods street gang affiliation will be excluded at trial since it is not sufficiently connected to any legitimate purpose under Rule 404(b). *See* Carter, 410 Fed.Appx. at 553 (Third Circuit "emphasize[d] that gang-affiliation evidence should be admitted only when it is solidly tied to some legitimate purpose other than a showing of a propensity to criminal conduct such as one or more of those specified in Rule 404(b): motive, identity, opportunity, and the like.").

### 3. Evidence Regarding Overdose Deaths

Thompson moves to preclude the government from presenting any evidence at trial that the distribution of drugs from the alleged drug trafficking conspiracy in this case resulted in overdose deaths.

Thompson's motion will be granted since the government essentially represents that even though "multiple overdose deaths that have flowed from the charged conspiracy", "the Government does not intend to introduce direct evidence of any of the deaths." (Doc. 412 at 10). The government also states that while "[it] intends to offer testimony regarding how the investigation into the charged conspiracy was initiated, i.e., the prosecution of James Rought, a/k/a "Fat Kid," and his statements", "[t]he fact of the death and overdose related to Rought's prosecution [and conviction] for a drug trafficking conspiracy need not be mentioned." (Id.). *See* U.S. v. Rought, 18-CR-353, M.D. Pa. (Rought was convicted by a jury after a trial in this court in a separate case for multiple counts of drug distribution resulting in death and serious bodily injury.).

As such, Thompson's motion will be granted to the extent that the government will not be allowed to introduce any evidence at trial related to any of the overdose deaths that allegedly stemmed from the drug trafficking conspiracy charged in this case, including in the Rought case.

## IV. CONCLUSION

Accordingly, based on the foregoing, Thompson's motion *in limine*, (Doc. 356), is **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 15, 2021**
20-108-02